2016 BNH 013

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:  Bk. No. 15-10003-BAH
Chapter 13

William Nevins,
        Debtor

*Sandra A. Kuhn, Esq.*      *Michael McCormack, Esq.*
*Family Legal Services, P.C.*      *Assistant United States Attorney*
*Concord, NH*      *Concord, NH*
*Attorney for the Debtor*      *Attorney for the Internal Revenue Service*

**MEMORANDUM OPINION**

**I. INTRODUCTION**

      The matter before the Court is the "Debtor's Motion for Disgorgement of 2015 Federal Income Tax Refund Withheld by the Internal [Revenue] Service for Obligations of the Non-Filing Co-Debtor Retained in Violation of the Confirmed Chapter 13 Plan"[1] (the "Motion to Disgorge") filed by the debtor William Nevins (the "Debtor") and the United States of America's Response to the Debtor's Motion for Disgorgement of Income Tax Refund filed by the United States of America[2] (the "Response") on behalf of the Internal Revenue Service (the "IRS"). The question presented is what is the proper means for determining the Debtor's interest in a tax refund generated by the Debtor filing a joint return with his non-debtor spouse? For the reasons set forth

---

[1] Doc. No. 41.

[2] Doc. No. 48.

below, the Court adopts the so-called "Separate Filings Rule" as the method for allocating a joint tax refund between a debtor and a non-debtor spouse.

**II. JURISDICTION**

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2).

**III. FACTS**

Although the details are still subject to some uncertainty at this stage, the basic underlying facts of this case are not in dispute.  On January 4, 2015, the Debtor filed a voluntary Chapter 13 petition.  On March 18, 2015, the IRS filed an Amended Proof of Claim for unpaid taxes totaling $42,641.94, consisting of a secured claim in the amount of $7,447.00; a priority claim in the amount of $944.17; and a general unsecured claim in the amount of $34,150.77.[3]  On his Schedule D – Creditors Holding Secured Claims,[4] the Debtor listed an IRS debt in the amount of $30,894.00, characterizing the claim as wholly unsecured and as a joint obligation with his non-debtor spouse, Linda Nevins ("Ms. Nevins").  The Debtor's Schedule E further stated that he had no creditors holding unsecured priority claims.

On July 21, 2015, the Court confirmed the Debtor's Amended Chapter 13 Plan dated June 13, 2015 (the "Plan").[5]  The Plan provides that the Debtor will pay $950.00 for the first four months of his plan, and then pay $856.26 for the remaining fifty-six months.  It further contemplates that

---

[3] Claim No. 3-3.

[4] Docket No. 1.

[5] Docket No. 32.

all tax refunds in an amount exceeding $1,200.00 during the plan's five-year term would be turned over to the Chapter 13 trustee for distribution. Under the Plan, the IRS will receive $944.17 at 0% interest on account of its priority claim, and $7,447.00 at 3% interest for a total of $8,029.00 on account of its secured claim. The Debtor estimates that the general unsecured claims, including the remaining portion of the IRS's claim, will be paid a pro rata distribution of approximately 2%. On September 24, 2015, the Court entered an ordering authorizing the Chapter 13 trustee to pay certain claims under the plan, including those of the IRS.[6]

For the 2015 tax year, the Debtor and Ms. Nevins filed a joint income tax return. The filing of this return resulted in an overpayment of tax liability in the amount of $1,293.00 (the "Refund"). Rather than issuing a refund to the Debtor and Ms. Nevins, the IRS executed a setoff of the Refund, applying it against the general unsecured portion of its claim (the "Setoff"). Accordingly, on May 18, 2016, the IRS filed an amended proof of claim reducing its general unsecured claim from $34,150.77 to $32,857.77.

On August 3, 2016, the Debtor filed the Motion to Disgorge, asserting that the Setoff violated the automatic stay and the terms of the Plan, and requesting that the Refund be disgorged and paid to the Chapter 13 trustee. On September 28, 2016, the IRS filed a response stating that the Refund was not property of the estate and appropriately set off against Ms. Nevins' outstanding joint tax liability. The IRS explained that under the so-called "Separate Filings Rule" adopted by the IRS, a debtor is only entitled to the portion of a joint refund equal to the amount of a refund that the debtor would receive had the debtor filed separately for the year at issue. Applying this rule to the facts of this case, the IRS determined that had the Debtor and Ms. Nevins filed individual tax returns for 2015, the Debtor would not have been entitled to a refund at all. Thus, according

---

[6] Docket No. 39.

to the IRS, the Setoff did not affect property of the Debtor's estate, although it did correspondingly reduce the IRS's unsecured claim against the estate.

The Court heard the Motion to Disgorge on October 5, 2016.[7] During oral arguments, the IRS urged the Court to adopt the Separate Filings Rule, but admitted that testimony from an IRS representative would be necessary to explain the particular calculus in this case. In contrast, the Debtor argued that the Refund should be allocated in proportion to the spouses' respective incomes, noting, without objection from the IRS, that Ms. Nevins' withholding was substantially less than the amount of the Refund. The parties agreed that even in the absence of the exact figures, which were not offered at the hearing but are not in dispute, the Court should decide the appropriate standard by which to determine the Debtor's rights to the Refund. Accordingly, at the conclusion of the hearing, the Court took the matter under advisement.[8]

**IV. DISCUSSION**

In order to assess whether the Setoff was appropriate, the Court must first determine to what extent, if any, the Refund was property of the Debtor's estate. In Chapter 13 cases, property of the estate includes "all legal or equitable interests of the debtor in property" wherever located and by whomever held at the commencement of the case or acquired prior to closure, dismissal, or conversion. 11 U.S.C. §§ 541(a)(1), 1306(a)(1). Without question, a Chapter 13 debtor's postpetition tax refund is property of the estate. See In re Halverson, No. 07-40121-JBR, 2009 WL 2171095, at *2 (Bankr. D. Mass. July 20, 2009); In re LaPlana, 363 B.R. 259, 262 (Bankr. M.D. Fla. 2007); In re Beltz, 263 B.R. 525, 527 (Bankr. W.D. Ky. 2001); In re Lafanette, 208 B.R.

---

[7] Judge J. Michael Deasy presiding.

[8] The Chapter 13 trustee did not file any response to the Motion or attend the October 5, 2016 hearing.

4

394 (Bankr. W.D. La. 1996).  The result is less certain where the refund is generated by a joint income tax return but only one of the spouses is in bankruptcy.

Generally, property interests in bankruptcy are defined by reference to applicable state law. Butner v. United States, 440 U.S. 48, 54-55 (1979).  Unfortunately, there is no New Hampshire state law that indicates how a tax refund should be allocated between spouses.  Bankruptcy courts facing this issue have employed at least four different approaches to determine the extent of the estate's interest in a joint tax refund.  In assessing these methods, this Court "must endeavor to predict how the state's highest tribunal would likely resolve the matter." In re Williams, 171 B.R. 451, 453 (D.N.H. 1994) (citing Moores v. Greenberg, 834 F.2d 1105, 1107 (1st Cir. 1987)).

The first method, called the "50/50 Rule," is to simply divide the tax refund equally between the spouses.  See In re Garbett, 410 B.R. 280 (Bankr. E.D. Tenn. 2009); In re Trickett, 391 B.R. 657 (Bankr. D. Mass. 2008), abrogated by Hundley v. Marsh, 459 Mass. 78, 944 N.E.2d 127 (2011); In re Marciano, 372 B.R. 211 (Bankr. S.D.N.Y. 2007); In re Innis, 331 B.R. 784 (Bankr. C.D. Ill. 2005); In re Barrow, 306 B.R. 28 (Bankr. W.D.N.Y. 2004); In re Hejmowski, 296 B.R. 645 (Bankr. W.D.N.Y. 2003); Loevy v. Aldrich (In re Aldrich), 250 B.R. 907 (Bankr. W.D. Tenn. 2000).  Some courts cite state domestic relations law as support for a joint ownership approach, see, e.g., In re Innis, 331 B.R. at 787; In re Hejmowski, 296 B.R. at 649–50; In re Aldrich, 250 B.R. at 913, while others simply find that approach the most fair and practical, given the complexity of considering all the factors linked to a tax refund.  See In re Trickett, 391 B.R. at 662.  The clear appeal of the 50/50 Rule is its simplicity.  The primary criticism of the 50/50 Rule is that it does not start with the premise that each spouse has a separate legal interest in the tax refund, instead relying on marital dissolution concepts which are at odds with policies underpinning the Bankruptcy Code.  See Crowson v. Zubrod (In re Crowson), 431 B.R. 484, 489

5

(B.A.P. 10th Cir. 2010); In re Duarte, 492 B.R. 100, 105 (Bankr. E.D.N.Y. 2011); see also Hundley v. Marsh, 459 Mass. 84 (noting that the equity considerations underlying asset distribution in divorce proceedings does not drive the allocation of property interests in bankruptcy).

The second method, called the "Income Rule," divides the tax refund in proportion to the income earned by each spouse. See In re Verill, 17 B.R. 652, 655 (Bankr. D. Md. 1982); In re Kestner, 9 B.R. 334, 336 (Bankr. E.D. Va. 1981). The Debtor urges the Court to adopt the Income Rule, but it has been virtually abandoned because an income only approach divides the refund based on "a factor which may have very little to do with actual contributions to the total tax obligations between spouses." In re Duarte, 492 B.R. at 105; In re Garbett, 410 B.R. at 285 n. 2; Hundley v. Marsh, 459 Mass. at 81, n. 6

The Income Rule has been seemingly supplanted by the so-called "Withholding Rule" which provides for the division of a joint tax return in proportion with each spouse's tax withholdings. See Gordon v. U.S., 757 F.2d 1157, 1160 (11th Cir. 1985); Carlson v. Moratzka (In re Carlson), 394 B.R. 491 (B.A.P. 8th Cir. 2008); Kleinfeldt v. Russell (In re Kleinfeldt), 287 B.R. 291 (B.A.P. 10th Cir. 2002); Monticello Arcade Ltd. Partnership v. Lyall (In re Lyall), 191 B.R. 78 (E.D. Va. 1996); In re Smith, 310 B.R. 320 (Bankr. N.D. Ohio 2004); In re WDH Howell, LLC, 294 B.R. 613 (Bankr. D.N.J. 2003); In re Gleason, 193 B.R. 387 (Bankr. D.N.H. 1996). The Withholding Rule, which presently appears to be the majority rule, starts with the premise that each spouse has a separate legal interest in the refund, and then quantifies that interest based solely on the percentage of withholdings attributable to each spouse's income. See In re Carlson, 394 B.R. 497; In re Kleinfeldt, 287 B.R. 293; In re Duarte, 492 B.R. at 104; In re Gleason, 193 B.R. at 388. The benefit of the Withholding Rule is that it is relatively easy to

6

understand and apply.  Indeed, Judge Vaughn adopted the Withholding Rule in In re Gleason, reasoning that

> this Court, realizing it is a court of equity, does not believe that it is a function of the bankruptcy court to dissect a debtor's joint tax return and allocate a refund on the basis of any number of individual items such as deductions, credits, individual business income and losses or exemptions.

Id. at 388.  Nevertheless, critics of the Withholding Rule contend that the failure to consider these other factors "produces a distorted picture of the refund's origin."  Hundley v. Marsh, 459 Mass. at 85; see In re Crowson, 431 B.R. 490 (holding that the Withholding Rule as adopted by the panel in In re Klienfeldt is the appropriate method where a joint tax return consists solely of returns from withholdings made by one spouse and does not involve any tax credits or other credits); In re Duarte, 492 B.R. 100, 108–09.

The final approach is the Separate Filings Rule advanced by the IRS, which was first articulated by the United States Bankruptcy Appellate Panel for the Tenth Circuit in In re Crowson.  The Separate Filings Rule, as succinctly explained by the Massachusetts Supreme Judicial Court,

> allocates the refund based on each spouse's hypothetical individual tax liability (hypothetical liability) had the spouses filed their tax returns as married parties filing separately. First, each spouse's contribution to "total payments" is determined. Second, each spouse's share of the joint tax liability is calculated based on the ratio of that spouse's hypothetical liability to the sum of both spouses' hypothetical liabilities. Each spouse owns that portion of the joint refund equal to the amount by which his or her contribution exceeds his or her share of the joint tax liability.

Hundley v. Marsh, 459 Mass. at 82 (citing In re Crowson, 431 B.R. at 491-492).  The Crowson panel developed this rule by reference to revenue rulings issued by the IRS for "determining what portion of a married couple's current-year joint income tax refund the IRS may retain and offset against one spouse's prior-year individual tax liability," which in turn "borrowed its previously established method of determining a decedent's separate tax liability (or refund) generated by a

joint return with the surviving spouse." 431 B.R. at 491; see also Rev. Rul. 80-7, 1980-1 C.B. 296 (1980); Rev. Rul. 74-611, 1974-2 C.B. 399 (1974).

The benefit of the Separate Filings Rule is that it not only considers the taxes withheld, but estimated tax payments, other out of pocket payments, and credits, all of which can significantly impact the amount of a tax refund.[9] Id.  As such, an increasing number of courts have adopted this method where the couple filing the joint return claim tax credits that will impact the amount of the tax refund.  See Lee v. Walro (In re Lee), 508 B.R. 399 (S.D. Ind. 2014); In re Crowson, 431 B.R. at 491-492; In re Duarte, 492 B.R. at 108; In re Hraga, 467 B.R. 527, 531 (Bankr. N.D. Ga. 2011); In re Palmer, 449 B.R. 621, 627 (Bankr. D. Mont. 2011); In re Evans, 449 B.R. 827, 831 (Bankr. N.D. Ga. 2010); see also Hundley v. Marsh, 459 Mass. at 86 (adopting the Separate Filings Rule but rejecting the apportionment of a child tax credit based on the ratio of the spouse's respective income).  The "lone complaint" against the Separate Filings Rule is that it is too complicated and unwieldy.  In re Duarte, 492 B.R. 108-09.

Having reviewed the different approaches, the Court finds that the Separate Filings Rule most accurately determines the spouses' proportionate rights to a joint tax refund under the totality of the circumstances, and concludes that if presented with the issue, the New Hampshire Supreme Court would adopt the Separate Filings Rule.  While the Separate Filings Rule is more complex than the alternatives, the Court agrees with the observation made by the court in In re Duarte:

> The fact that it may be complicated is no reason to reject it for a "bright line" approach which has the attraction of simplicity but fails to protect each spouse's true legal interest in and to the tax refund.

---

[9] For example, the earned income tax credit is considered an overpayment and refunded if the individual's tax credit exceeds the amount of the tax owed even if the individual has not actually withheld such taxes.  Williamson v. Jones (In re Montgomery), 224 F.3d 1193, 1194 (10th Cir. 2000).

8

492 B.R. at 108–09.  Moreover, the Court notes that the complexity falls away where the couple has not claimed any tax credits on their joint return because the Separate Filing Rule will yield the same result as the easier to apply Withholding Rule.  Hundley v. Marsh, 459 Mass. at 86 n. 19.  Ultimately, the Court's adoption of the Separate Filings Rule in contested matters should not be viewed as a bar to consensual resolutions as this formula need only be employed where the parties in interest do not otherwise agree on the proper allocation of the joint tax refund.  See In re Duarte, 492 B.R. at 109 ("This Court is not ruling that the Trustee, the debtor and the non-debtor spouse in each case must undertake this analysis in order to determine each parties' [sic] interest in a joint income tax refund, but this formula shall be employed where the parties do not agree on the proper allocation.").

### V. CONCLUSION

For the reasons stated, the Court adopts the Separate Filings Rule as the method for determining the debtor's interest in a tax refund generated by a joint tax return filed with a non-debtor spouse in contested matters.  Nevertheless, the Court is unable to decide the Motion to Disgorge on this record.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will schedule further proceedings consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Dated: December 23, 2016              /s/ Bruce A. Harwood
                                      Bruce A. Harwood
                                      Chief Bankruptcy Judge